IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIDWEST UNDERGROUND, INC, | ) |
| | ) Civil Action No. 12-0560 |
| Plaintiff, | ) |
| | ) |
| v. | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| LAUREL MOUNTAIN MIDSTREAM | ) |
| OPERATING, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Defendant has filed a Motion to Dismiss Count Two and Count Three of Plaintiff's Complaint (ECF No. 10). After careful consideration of Defendant's motion and Plaintiff's response, and their respective memoranda of law, Defendant's motion to dismiss these claims will be granted.

### I.   Relevant Factual and Procedural History

According to the Complaint (ECF No. 1), Plaintiff, Midwest Underground, Inc. ("Midwest"), an Illinois corporation, contracted with Defendant, Laurel Mountain Midstream Operating, LLC ("LMM"), a Delaware corporation, to dig and construct an underground natural gas pipeline in Greene County, Pennsylvania. The "Contract" was for the "Gamelands to Jordan Pipeline" ("Project"), and was entered into on May 18, 2011.

LMM invited Midwest to bid on the Project on April 28, 2011. The bid information included the nature of the Project and that the Contract would be based on a Unit Pay Item price sheet. According to the bid information, construction was to begin on May 16, 2011 and be completed by September, 2011. Complaint, (ECF No. 1, ¶ 8).

Based on the bid information and Project description, which indicated that permits,

1

easements, bonds and rights were, or would be acquired by LMM, that the Project design was properly engineered, and that all supplies would be given to Midwest in a timely fashion, Midwest assumed the normal "spread" method of construction, and submitted a bid. LMM awarded the Contract to Midwest. Construction was to begin on June 7, 2011, and be completed by September 30, 2011. Id., at ¶ 11.

Under the Contract, LMM was obligated to obtain all necessary permits, liens, rights of way, and easements, and provide a list of supplies for the Project. *See*, Id., at ¶ 17. Also, LMM would provide all engineered plans and drawings for the Project. Id.

The Complaint alleges that, although LMM had advised Midwest that Midwest would be doing the requisite ground clearing, LMM hired another contractor to do so before LMM signed the Contract with Midwest. Id., at ¶ 19. The performance of that third party contractor led to disruptions in the progress of the Project. Further, LMM failed in many instances to obtain the necessary permits and rights of way for the construction to proceed in a timely manner. Finally, the Complaint alleges that LMM's construction plans were sub-standard and incomplete. Id., at ¶ 26. Delays caused by these deviations from the contractual duties assumed by LMM, and the failure to remedy them in a timely manner, compounded and led to an extremely prolonged and significantly more expensive construction process. Midwest's costs exceeded 300% what it expected based on the bid information and Project description. Id., at ¶ 36.

Midwest advised LMM that it would stay on the project, but requested that all work done after January 19, 2012 be paid for on a time and material basis. LMM refused to agree to this. Id., at ¶ 39.

Midwest utilized the dispute resolution process that was provided in the Contract to present requests for payment of additional costs incurred. After Midwest was denied additional

compensation in dispute resolution, it filed the Complaint at issue. Midwest asserts these claims under Pennsylvania common law: Count One, breach of contract; Count Two, negligent misrepresentation; and Count Three, unjust enrichment. In addition to monetary damages, Midwest seeks declaratory relief regarding refunds for incorrect billing, a penalty for failure to comply with the Pennsylvania Contractor and Subcontractor Payment Act, and a payment of attorney's fees and litigation costs. LMM filed this Motion to Dismiss.

**II.     Standard of Review**

A. Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009); Twombly, 550 U.S. at 555. As the Supreme Court made clear in Twombly, however, the "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950 (citing Twombly, 550 U.S. at 556). This standard requires showing more than a mere possibility that a defendant has acted unlawfully. Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that

3

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949).

After Iqbal, the United States Court of Appeals for the Third Circuit explained that a district court must conduct the following analysis to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, — U.S. —, 132 S.Ct. 1861 (2012); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Twombly and Iqbal have not changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and the requirements of Fed. R. Civ. P. 8 must still be met. See Burtch, 662 F.3d at 220. Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." Twombly, 550 U.S. at 555 n. 3 (internal alterations, citations, and quotations omitted). The Supreme Court has explained that a complaint need not be "a model of the careful drafter's art" or "pin plaintiffs' claim for relief to a precise legal theory" so

4

long as it states "a plausible 'short and plain' statement of the plaintiff's claim." Skinner v. Switzer, — U.S. —, 131 S.Ct. 1289, 1296 (2011); see also Matrixx Initiatives, Inc. v. Siracusano, — U.S. —, 131 S.Ct. 1309, 1322 n. 12 (2011) (emphasizing that "to survive a motion to dismiss, respondents need only allege 'enough facts to state a claim to relief that is plausible on its face' ") (quoting Twombly, 550 U.S. at 570)).

B. Choice of Law

In cases such as this, in which jurisdiction is based on diversity, a federal court should apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994). Where, as here, the Contract in question contains a forum selection clause, enforceability of this provision should be evaluated under the law of the forum state. The Contract provides that contract interpretation will be governed by the laws of Oklahoma and litigated in Oklahoma. However, Pennsylvania law explicitly states: "making a contract subject to the laws of another state or requiring that any litigation . . . on the contract to occur in another state, shall be unenforceable." Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. § 514 (West 1994). Further, both parties agree that Pennsylvania law should govern this case. Complaint (ECF No. 1, ¶ 6) and footnote 1 of Defendant's Brief in Support of Motion to Dismiss (ECF No. 11, p. 1). This Court agrees that Pennsylvania law is the appropriate choice, and therefore will apply Pennsylvania state law in the adjudication of the issues in this case.

**III. Application to Plaintiff's Claims**

A. Count Two: Negligent Misrepresentation

In its second Count for relief, Plaintiff alleges that Defendant made representations in "its bid information and in the Contract" which were "wrong, false and/or misleading." Complaint,

5

(ECF No. 1, ¶¶ 59, 64). These misrepresentations included (1) the expected time to begin, perform, and complete the Project; (2) that the design of the Project was adequate; and (3) that Defendant would provide access roads. (Id., at ¶ 59). Plaintiff claims that it relied on these misrepresentations to its detriment, and seeks "actual reasonable costs incurred, reasonable markup for its overhead and profit; less the amount that it has been paid by [Defendant]." Id., at ¶ 66.

Each of these alleged misrepresentations were explicitly integrated into the parties' Contract. Contract, Article 2.7, Complaint, Exhibit A, (ECF No. 1-2, p. 7 of 63). Assuming the facts alleged in the Plaintiff's Complaint to be true, as we must, Plaintiff has stated a claim for breach of contract based on the duties and obligations imposed by the Contract. Defendant's failure to perform the duties established in the Contract is alleged as a breach of contract in Count One, as well as a misrepresentation claim in Count Two. Further, any damages caused by negligent misrepresentation are duplicative of the damages caused by breach of contract. Complaint, (ECF No. 1, ¶¶ 56, 66). The economic loss doctrine and the gist of the action doctrine bar recovery for Plaintiff's claim of negligent misrepresentation, as discussed below.

1. Economic Loss Doctrine

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quotations omitted). If the damages alleged in the tort claims arise purely from economic benefits that were expected during the course of performance of the contract, recovery in tort is inappropriate. Fid. & Deposit Co. of Md. v. Int'l Bus. Mach. Corp., No. Civ. A. 05-461, 2005 WL 2665326, at *2 (M.D.Pa. Oct. 19, 2005).

> It is the character of the plaintiff's loss that determines the nature of the available remedies. In other words, when loss of the benefit

6

>of a bargain is the plaintiff's sole loss, the undesirable consequences of affording a tort remedy in addition to a contract-based recovery [are] sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims.

Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618-19 (3d Cir. 1995) (internal citations and quotations omitted).

The Supreme Court of Pennsylvania recognized a narrow exception to the economic loss doctrine where the party that negligently misrepresented information is engaged in supplying information to others for pecuniary gain, and there is no contractual relationship, rendering recovery under a contract unavailable. Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 288 (Pa. 2005). Pennsylvania courts have chosen not to expand this exception to other types of parties and relationships, such as for parties that do not provide information for pecuniary gain, or where there is a contractual relationship. *See* Excavation Techs., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 843 (Pa. 2009).

Plaintiff seeks damages for negligent misrepresentations which are alleged to have directly caused the same economic costs and lost profits due and associated with the breach of contract claim. Negligent misrepresentation sounds in tort, while the corresponding breach of contract claim sounds in contract law. Therefore, breach of contract trumps the negligent misrepresentation claim, and the economic loss doctrine bars the tort claim.

Further, the case at hand does not fall under Pennsylvania's narrow exception to the economic loss doctrine. This Court does not need to determine whether Defendant may have been acting in the capacity of a design professional, or whether Defendant had a pecuniary interest in the information that it was providing. This case is distinguishable from the exception drawn in Bilt-Rite because Plaintiff and Defendant are in privity of contract. Bilt-Rite

recognized the exception because the plaintiff in that case had no recourse in contract law. *See* Bilt-Rite, 866 A.2d at 288. Plaintiff, here, has contracted with defendant and has recourse with which to pursue his claims pursuant to common law breach of contract. This claim does not fall under the narrow exception to the economic loss doctrine, and Count Two should therefore be barred.

2. Gist of the Action Doctrine

The "gist of the action" doctrine "forecloses a party's pursuit of a tort action for the mere breach of contractual duties, without any separate or independent event giving rise to the tort." The Knit With v. Eisaku Noro & Co., Ltd., Civ. A. No. 08-4221, 2009 WL 3427054, at *4 (E.D.Pa. 2009) (internal citations omitted). This Court must determine whether the claims sought to be dismissed are essentially tort claims based solely on breach of contractual duties.

> The doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract.

Id., at *5 (internal quotations omitted). The test requires that the Court "focus on the substance of the dispute," and to ask what the case is essentially about. Pediatrix Screening, Inc. v. Telechem Int'l, Inc., 602 F.3d 541, 550 (3d Cir. 2010).

The doctrine has not been expressly adopted by the Supreme Court of Pennsylvania, but the Third Circuit predicted that the "state supreme court would adopt the doctrine as set out in the Superior Court's cases." Williams v. Hilton Group PLC, 93 Fed.Appx. 384, 385 (3d Cir. 2004). As Judge Weis explained in Pediatrix Screening:

> Although [the Pennsylvania] Supreme Court has not expressly adopted the gist of the action doctrine, it recognized decades ago the difficulties inherent in allowing a party to proceed with both

8

> tort and contract claims for harm that arose in connection with a contractual relationship. See Glazer v. Chandler, 414 Pa. 304, 200 A.2d 416, 418 (1964) ("[t]o permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions"). Such complications as statutes of limitations, damages, and standards of proof come to mind as differences that have long been established. Blurring the bright line between tort and contract could diminish confidence in the value of the negotiated instrument and deter private parties from entering into contracts.

602 F.3d at 548.

Whether the gist of the action doctrine applies is a question of law. Alexander Mill Servs., LLC v. Bearing Distribs., Ins., Civ. A. No. 06-1116, 2007 WL 2907174, at *8 (W.D.Pa. 2007). The 12(b)(6) Motion to Dismiss stage of the litigation is the appropriate time to evaluate the invocation of the gist of the action doctrine. Metro Auto Sales v. Alfred Stein, Inc., Civ. A. No. 05-4721, 2006 WL 237505, at *3 (E.D. Pa. 2006).

The gist of the action doctrine also precludes recovery on Plaintiff's negligent misrepresentation claim. Here, Plaintiff's first claim, breach of contract, and second claim, negligent misrepresentation, are based on the same contractual duties and representations, and seek the same damages. *Compare* Complaint (ECF No. 1, ¶¶ 50(a), 50(d-f), 56), *with* Complaint (ECF No. 1, ¶¶ 59, 66). Because this tort claim essentially duplicates the breach of contract claim at Count One, and because the success of a negligent misrepresentation claim is wholly dependent on the terms of the Contract, the gist of the action doctrine precludes recovery on Plaintiff's negligent misrepresentation claim.

In Plaintiff's Brief in Opposition to Motion to Dismiss, Plaintiff characterizes its negligent misrepresentation claim as a fraudulent inducement claim (ECF 15, p. 10). Plaintiff argues that the gist of the action doctrine does not preclude relief in tort for fraudulent

inducement of a contract. If the negligent misrepresentation claim is construed as a fraudulent inducement claim which requires that the misrepresentation be made with the specific intent to induce another into a contract,[1] the gist of the action doctrine would not bar recovery. In Re Allegheny Int'l., 954 F.2d 167, 178 (3d Cir. 1992). However, if the fraud at question concerns the performance of duties established in the contract, as it does here, "the alleged fraud is generally held to be intertwined with the contract claim for breach of those duties," and therefore does not support an additional claim for fraudulent inducement. The Knit With, 2009 WL 3427054 at *9 (citing eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10 (Pa. Super. Ct. 2002). "In other words, the gist of the action doctrine generally bars fraud claims in cases where a defendant's alleged failure to perform its duty under the contract is transformed into a claim that this failure amounts to fraud. Id. Thus, the gist of the action doctrine prohibits recovery for the negligent misrepresentation claim.

### B. Count Three: Unjust Enrichment

Plaintiff alleges that Defendant "received the benefit of the dramatically increased quantities, Units and costs, substantially extended duration of the Project, extra work and effort provided by Midwest." Complaint, (ECF No. 1, ¶ 71). These benefits are allegedly "beyond and outside" the scope of the Contract, and Defendant unjustly "refused to reasonably compensate [Plaintiff] for its work and costs incurred to complete the Project." Id., at ¶ 72, 74. Plaintiff alleges that they conferred these benefits to Defendant "in order to fulfill [the] commitment to finish the construction," but requested additional compensation. Id., at ¶ 39. Plaintiff requested that all work done after January 19, 2012, be paid for on a time and material basis. However, Defendant refused to pay for the work on this basis because Plaintiff "had exceeded contract unit quantities, despite the fact that Midwest had previously notified [Defendant] that it would have

---

1 The Court expresses no opinion on the merits of this argument.

to install Units in quantities well in excess of the amounts stated in Appendix D to the Contract." Id., at ¶ 41.

Unjust enrichment occurs when "the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987). Defendant, citing Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250 (Pa. 2006), states that "Pennsylvania courts will dismiss an unjust enrichment claim where the plaintiff alleges the existence of a construction contract between the parties." Defendant's Brief in Support of Motion to Dismiss, (ECF No. 11, p. 7). The cited rule is that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." Skepton, 895 A.2d at 1254. *See*, HCB Contractors v. Rouse & Assocs., Inc., 91-CV-5350, 1992 WL 176142 (E.D. Pa. July 13, 1992) ("To dismiss [unjust enrichment claims], [the Court] must first find that the contracts entered by the parties at the beginning of the Project encompass the work that is the subject of [the unjust enrichment] claim").

In the Complaint, Plaintiff states that the additional work was done in order to complete the very Project for which it contracted. Complaint, (ECF No. 1, ¶ 39). Plaintiff proffers only conclusions that the work done exceeded the scope of the Contract, and fails to allege plausible facts on which this Court reasonably can draw such a conclusion. "The doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" Skepton, 895 A.2d at 1254 (quoting Third Nat'l & Trust Co. of Scranton v. Lehigh Valley Coal Co., 44 A.2d 571, 574 (1945)). The doctrine of

unjust enrichment cannot be applied because the work performed was done in order to complete the Project established in the Contract, and there are no reasonably sufficient factual claims that the work done was beyond that scope. Count Three will also be dismissed.

### IV. Conclusion

For the reasons set forth above, the Court will grant defendant's motion to dismiss Counts Two and Three by separate Order of Court.

*Cynthia Reed Eddy*
The Honorable Cynthia Reed Eddy
United States Magistrate Judge

cc: All ECF Registered Counsel